## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GREGORY W. PROSSER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-01117-TWP-TAB |
| | ) | |
| CAPITAL ONE BANK (USA), N.A., | ) | |
| CAPITAL ONE FINANCIAL CORPORATION, | ) | |
| CAPITAL ONE SERVICES, LLC, | ) | |
| EQUIFAX, INC., and | ) | |
| MARK BEGOR, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING CAPITAL ONE DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on a Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Capital One Bank (USA), N.A. ("Capital One"), Capital One Financial Corporation ("COFC"), and Capital One Services, LLC ("COS") (collectively, the "Capital One Defendants") (Filing No. 39). In his Amended Complaint, Plaintiff Gregory W. Prosser's ("Prosser") alleges violations of the Federal Credit Reporting Act ("FCRA"), the Indiana Deceptive Consumer Sales Act ("IDCSA"), and the Indiana Senior Consumer Protection Act ("ISCPA") against the Capital One Defendants; as well as Equifax, Inc. ("Equifax") and Mark Begor ("Begor") (collectively, the "Equifax Defendants") (Filing No. 27).  For the following reasons, the Court **grants** the Capital One Defendants' Motion to Dismiss.

## I.    BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Complaint and draws all inferences in favor of the Prosser as the non-moving party. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

To be caught unaware by unfamiliar or negative items on a credit report can be unnerving, but this is exactly what happened to Prosser in early 2020. Prosser obtained and reviewed a copy of his credit report and discovered, to his surprise, "the existence of a Capital One account he knew nothing about" (the "Mystery Account") (Filing No. 27 at 2).  He promptly contacted Capital One and was told the Mystery Account was in good standing.  He was informed that although he was an "authorized user of a card under the account," he could not be given information about the primary account holder and he was given only the first four and last four digits of the account number and the surname of the primary account holder.  *Id.*  Prosser did not recognize the surname.

On January 30, 2020, Prosser, through counsel, wrote to the chief executive officer and general counsel of Capital One and requested (1) "a copy of the application for the account"; (2) "copies of any documents authorizing [] Prosser as a user of the account or otherwise connecting [] Prosser to the account"; (3) "the full name of, and contact information for, the primary account holder"; and (4) "copies of all instruments used for payments on the account."  *Id.* at 3.  Capital One's chief executive officer nor general counsel responded to his January 30, 2020 letter, however, Prosser did receive a letter dated February 18, 2020, from "Stephen – CVD334, on behalf of Capital One."  *Id.*

The February 18, 2020 letter from 'Stephen' "reiterated what Prosser had been told in his initial inquiry–that his name "had been removed from the account."  *Id.*  However, Prosser had not made a request to have his name removed.  *Id.*  By March 19, 2020, Prosser felt that he was being "[s]tonewalled in his effort to obtain information" from Capital One so he filed suit in the Marion Superior Court, Indiana.  *Id.* at 4.  The Capital One Defendants subsequently removed the case to federal court (Filing No. 1).  After removal, Capital One's counsel informally furnished  Prosser

with the identity of the primary account holder of the Mystery Account—a former girlfriend who had since married and changed her last name (Filing No. 27 at 4).

The Mystery Account experience "prompted Prosser to have a financial analyst review his credit reports." *Id*. Prosser discovered that Equifax had been reporting for at least two years that a Capital One account associated with the Capital One judgment "had a balance of about $197,724 at its lowest level, and higher at earlier points in time." *Id.* Equifax reported "regular payments of over $1,200 were being made on the account." *Id.* at 5. Prosser neither owed the six-figure balance nor had he made any monthly payments of $1,200.00 to any creditors within the last two years. *Id*. Moreover, "[c]redit reporting agencies other than Equifax have not reported a six figure balance on any account of Prosser's within the preceding two years." *Id*.

On July 17, 2020, Prosser informed the Capital One Defendants about the "impossible six-figure balance" being reflected on his Equifax credit report. *Id.* Days later, Prosser served a "written request for information concerning the six-figure balance" on Equifax's Chief Executive Officer, Begor. *Id*. Prosser did not receive a response from Equifax or Begor nor did the Capital One Defendants respond to his counsel's email about the High Balance Account. *Id*.

Prosser amended his Complaint on September 3, 2020, and added Equifax and Begor to the suit. *Id*. He alleges the Capital One Defendants, and the Equifax Defendants violated the FCRA by not responding "promptly and substantively" to his information request and failed to "correct erroneous information on Prosser's credit report." *Id.* at 6, 7. Prosser further alleged the Capital One Defendants violated the IDCSA and ISCPA. *Id*. The Capital One Defendants moved to dismiss all claims on December 15, 2020 (Filing No. 39).

## II.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff.  *Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).  However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007).  Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## III.  DISCUSSION

In their Motion to Dismiss, the Capital One Defendants ask the Court to dismiss all four claims brought against them in Prosser's Amended Complaint.  The Court will address each of the claims as presented by the Capital One Defendants in their Motion.

**A.**    **Count 1: FCRA Violation – Failure to Respond to Request for Information**

In Count 1 Prosser alleges the Capital One Defendants breached their duty under the FCRA to "respond promptly and substantively to Prosser's reasonable request for information." (Filing No. 27 at 6.)

The Capital One Defendants assert that Prosser's specific allegations of their ostensible violation of the FCRA in Count 1 consists of (1) stonewalling Prosser's effort to obtain information about the primary account holder on the Mystery Account, and (2) failure to respond to Prosser's request for information about the balance on his Equifax credit report relating to the High Balance Account (Filing No. 40 at 5). The Capital One Defendants argue that Prosser's claim fails as a matter of law because Capital One owed no duty under the FCRA, or any other law, to respond to "either one of [Prosser's] requests." *Id.*

The FCRA imposes two sets of duties on furnishers of credit information:

[]First, under subsection (a) of § 1681s-2, furnishers of information have a duty not to report inaccurate credit information, along with other related duties, such as a duty to correct and update credit information. 15 U.S.C. § 1681s-2(a). Second, under subsection (b), furnishers of information have a duty to conduct a reasonable investigation into disputed information, if notified by a consumer reporting agency that an individual has disputed the information.[]

*Id.* at 5–6 (quoting *Kleyweg v. Bank of Am., N.A.*, 2017 WL 553186, at *3 (N.D. Ind. Feb. 10, 2017)).

The Capital One Defendants argue "at best, [Prosser] is alleging a violation of Section 1681s-2(b)," which provides for a right of action where a furnisher of credit information fails to

undertake a proper investigation upon receipt of a notice of dispute from a consumer reporting agency regarding information that it has furnished. *Id.* at 6; *see* 15 U.S.C. § 1681s-2(b)(1). The Capital One Defendants contend a claim under Section 1681s-2(b) can only survive dismissal where the consumer pleads that they have notified a credit reporting agency of disputes with the accuracy of the information the furnisher provided, and the credit reporting agency subsequently advises the furnisher of the dispute. *See Jackson v. Experian Info. Sols., Inc.*, No. 15 C 11140, 2016 WL 2910027, at *1 (N.D. Ill. May 19, 2016) (citations omitted).

With respect to Prosser's allegation that he submitted a written request for information concerning the High Balance Account to Equifax in July 2020, the Capital One Defendants argue that Prosser's claim fails two necessary elements to maintain a claim under Section 1681s-2(b) of the FCRA. First, Prosser does not allege that his written information request to Equifax contained any notification that he was disputing the accuracy of the information provided by Capital One. Second, Prosser does not allege that Equifax, or any other credit reporting agency, notified Capital One of any dispute. *Id.*; *see Bowers v. Equifax Info. Servs., LLC*, No. 1:19-cv-02584-SEB-MJD, 2020 WL 6461151, at *2 (S.D. Ind. Nov. 3, 2020).

Prosser responds that the Capital One Defendants are mistaken as the FCRA imposes only two duties on furnishers of credit when other duties exist "and many are owed to consumers." (Filing No. 51 at 5.) He argues the cases cited in support by the Capital One Defendants are without merit because they did not involve direct disputes filed by consumers. *Id.* When taken as a whole, his Amended Complaint supports a claim that the Capital One Defendants have acted with a willful intent to injure him. Distinguishing his claims from those brought under §1681s-2(a), Prosser asserts he has a private right of action against the Capital One Defendants for willful

or negligent failure to comply with the requirements of the FCRA under Sections 1681(n) and 1681(o). *See* 15 U.S.C. §§ 1681(n),(o).[1]

Responding to the Capital One Defendants' claim that he failed to allege that Equifax, or another credit reporting agency, notified Capital One of a dispute, Prosser maintains that whether the credit reporting agency notified the furnisher of credit information is not at issue. He cites *Huber v. Trans Union, LLC*, No. 4:11-cv-139-SEB-DML, 2012 WL 3045686, at *7–8 (S.D. Ind. July 25, 2012) in support, arguing that it is the credit reporting agency's obligation under the law to notify the furnisher of information of the dispute and the plaintiff need not allege the credit reporting agency notified the furnisher. Prosser argues it is "entirely reasonable to infer from the allegations in the Amended Complaint that Equifax communicated [Prosser's] concerns to" the Capital One Defendants (Filing No. 51 at 12).

In reply, the Capital One Defendants insists that Prosser cannot maintain an actionable claim under the FCRA or its regulations for their alleged failure to respond to Prosser's requests for information.  They argue that Prosser is alleging a violation of Section 1681s-2(a)(8)[2] of the FCRA and 12 C.F.R. § 1022.43 by asserting that the Capital One Defendants failed to properly respond to (1) his January 30, 2020 letter requesting information about the primary account holder on the Mystery Account, and (2) his former counsel's ("Munson") July 2020 email to the Capital One Defendants' counsel informing them about the "impossible six-figure balance on Prosser's Equifax credit report."  (Filing No. 55 at 4.)  The FCRA specifically exempts violations of Section 1681s-2(a), including any associated regulations, from private civil liability and courts have held

---

[1] Under the FCRA, Section 1681(n) provides civil liability for willful non-compliance and Section 1681(o) provides civil liability for negligent noncompliance. 15 U.S.C. §§ 1681(n),(o).

[2] Regulations governing the "Ability of consumer to dispute information directly with furnisher." 15 U.S.C. § 1681s-2(a)(8).

that the regulations themselves do not create a private right of action distinct from the FCRA.  *See Chiang v. Verizon New England Inc.*, 595 F.3d 26, 35 (1st Cir. 2010).  Thus, even if they failed to respond to Prosser's information requests or investigate any credit reporting dispute submitted directly to Capital One, Prosser's claim still fails as a matter of law because there is no private right of action under 1681s-2(a)(8) nor 12 C.F.R. 1022.43.  *Id.* at 5.

The Capital One Defendants further contend that despite Section 1681s-2(b) providing a right of action where a furnisher fails to properly undertake an investigation upon receipt of notice of a dispute regarding the accuracy of information it has furnished, Prosser cannot maintain an actionable claim under this provision.  And because Prosser failed to establish that Equifax notified Capital One of this dispute, he does not have an actionable claim under Section 1681s-2(b).

Capital One argues that Prosser's theory that it is reasonable to infer that Equifax subsequently notified Capital One of his dispute—fail for two reasons.  *Id.*  First, a consumer's direct dispute to a furnisher does not trigger the furnisher's duties or liability under Section 1681s-2(b), instead, it is only after the furnisher receives notice of the dispute from a credit reporting agency do such duties arise.  Therefore, Prosser's claim that he disputed the information on his credit report directly with Capital One, "cannot, as a matter of law, give rise to an actionable claim under Section 1681s-2(b)." *Id.* at 6.  Second, Prosser had the ability to determine whether his dispute to Equifax was ever forwarded to Capital One or the Capital One Defendants before filing his claims.  Several courts have warned plaintiffs of the inappropriateness of bringing a FCRA claim against a furnisher without investigating—through Section 1681i(a)(6)—whether the dispute was ever transmitted to the furnisher.  *Id.; see Densmore v. Gen. Motors Acceptance Corp.*, No. 03 C 1866, 2003 WL 22220177, at *2 (N.D. Ill. Sept. 25, 2003).

As required when reviewing a motion to dismiss, the Court accepts the pleadings as true and draws all inferences in favor of Prosser as the non-moving party. *Bielanski*, 550 F.3d at 633. However, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citations omitted). Prosser's allegation concerning the Capital One Defendants' breach of a "duty to respond promptly and substantively," fails to state or support an actionable claim under the FCRA, under Sections 1681s-2(b), 1681(n), or 1681(o).

Count 1 of the Amended Complaint provides only a threadbare assertion that "[a]t all relevant times, [the Capital One Defendants] . . . were under a FCRA-imposed duty to respond promptly and substantively to Prosser's reasonable request for information" and "[the Capital One Defendants] . . . breached their duty to Prosser , in violation of the FCRA." (Filing No. 27 at 6.) Prosser does not allege—and his facts do not support—that his "reasonable request for information" was a sufficient notice disputing the accuracy of information to a consumer reporting agency. Further, Prosser does not allege that the Capital One Defendants received the required notice of the dispute from a consumer reporting agency which triggers their duties as furnishers of information under Section 1681s-2(b). *See Gulley v. Pierce & Assocs., P.C.*, 436 F. App'x 662, 665 (7th Cir. 2011) ("[A]bsent a formal notice from a credit agency, . . . duty to investigate was never triggered."). Instead, Prosser asserts that *he* notified the Capital One Defendants via his July 2020 email sent by Munson to the Capital One Defendants' lawyers which "constitutes direct dispute." (Filing No. 51 at 12.) Prosser thus fails to state a claim entitling him to relief under Section 1681s-2(b). *See Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) (outlining steps a furnisher of information must take after being notified of a dispute by a consumer reporting agency).

Prosser's citation of the decision in *Huber*, 2012 WL 3045686, is duly noted by the Court, *see id.*, at *3 ("If a plaintiff alleges that she notified a [consumer reporting agency] that she disputed specific information which the [consumer reporting agency] had gathered and reported regarding her credit, she need not also allege that the [consumer reporting agency] notified the information furnisher of the dispute because it is the [consumer reporting agency's] obligation under the law to do so."). This Court and other district courts in the Seventh Circuit have addressed this issue and their analysis is applicable here.

The *Huber* decision relied on the decision in *Lang v. TCF National Bank*, 249 Fed. Appx. 464–67 (7th Cir. 2007). In *Lang*, an unpublished decision, the Seventh Circuit held the district court improperly dismissed the plaintiff's claim because they had not alleged that a consumer reporting agency notified the furnisher of the dispute. *Id.* at 467. The court found that to survive a motion to dismiss, the plaintiff's complaint needed only to provide "fair notice" to the defendant of what the claims are and show that recovery is plausible. *Id.* at 466. In *Lang*, the plaintiff pleaded that he notified a consumer reporting agency of his dispute and the furnisher failed to investigate the contested information upon learning of the dispute. *Id.* The court found these allegations were sufficient to state a claim. *Id.* The court reasoned that plaintiffs may not be able to plead that the consumer reporting agency notified the furnisher of the dispute because the FCRA does not require a consumer reporting agency to notify a consumer when it reports the dispute to the furnisher. *Id.*

As noted by this Court, "*Lang* provides no guidance here." *Bowers*, 2020 WL 6461151, at *2 (noting awareness of non-precedential decision in *Lang* and declining to follow). First, following the Supreme Court's opinions in *Twombly* and *Iqbal*, complaints brought in federal courts must contain "sufficient facts to state a claim for relief that is plausible on its face." *Neiman v. Chase Bank, USA, N.A.*, No. 13 C 8944, 2014 WL 3705345, at *7 (N.D. Ill. July 25, 2014)

(finding *Lang* unpersuasive and holding plaintiff failed to allege sufficient facts that furnisher's duties were triggered under § 1681s-2(b)). Second, it was within Prosser's power to easily determine whether Capital One received the required notice from the consumer reporting agency—without discovery—through the mechanisms provided by the FCRA. *Id.* As noted by the court in *Neiman*, "[r]ecent district court decisions requiring an allegation of the requisite notice are correct that this "key information" is "easily verif[iable]." *Id.* (citations omitted). Third, as noted in *Bowers*, the complaint in *Lang* was replete with factual allegations which supported the Seventh Circuit's determination that the defendant was on "fair notice" of the claims against it, irrespective of whether it was explicitly alleged that the defendant had been officially notified of the dispute. *See Bowers*, 2020 WL 6461151, at *2. Here, like in *Bowers*, Prosser's Amended Complaint does not allege sufficient allegations consistent with a finding of liability against the Capital One Defendants.

Prosser argues that he notified Equifax of his dispute and that it would be reasonable for the Court to infer that Equifax notified the Capital One Defendants. *Id.* The Court disagrees that such an inference would be reasonable. First, Prosser's alleges that he served a "written request for information" to Equifax, (Filing No. 27), but he does not allege he disputed the information or its accuracy in his request for information which undermines his claim that he has pleaded sufficient facts which this Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Compounded with the fact that the Amended Complaint makes no mention that the Capital One Defendants received notice from a consumer reporting agency of his disputed credit information which would trigger the duties of the furnisher under Section 1681s-2(b), this Court determines Prosser's claim is subject to dismissal. *See Dornhecker v. Ameritech Corp.*, 99 F. Supp. 2d 918, 929 (N.D. Ill. 2000) (FCRA plaintiff's

complaint deficient where he did not include any allegation that furnisher received notice from a credit reporting agency that the credit information was disputed).

Similarly, despite Prosser's belated assertion in his response that the Capital One Defendants acted with a willful intent to injure him, (*see* Filing No. 51 at 16), the Court is not obligated to accept his legal conclusions as true. *See Burger v. Cty. of Macon*, 942 F.3d 372, 374 (7th Cir. 2019) (holding the court is "not bound to accept legal conclusions as true" in analyzing motion to dismiss) (citations omitted). The Court determines Prosser has not pled sufficient factual content which support that the Capital One Defendants were liable for willful or negligent noncompliance with the FCRA under Sections 1681(n) or 1681(o), or that they acted with reckless disregard in violation of the statute. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71, (2007) (finding "reckless disregard of a requirement of FCRA would qualify as a willful violation"); *see also Vazquez-Garcia v. Trans Union De Puerto Rico*, 222 F. Supp. 2d 150, 157 (D.P.R. 2002) (noting "Congress expressly provided consumers with a private cause of action for willful or negligent violations of § 1681s–2(b)" which are 15 U.S.C. §§ 1681n(a) for willful violations and § 1681o(a) for negligent violations).

Accordingly, the Court **grants** the Motion to Dismiss Count 1 of the Amended Complaint against the Capital One Defendants.

**B.**    **Count 3: FCRA Violation – Incorrect Reporting**

In Count 3, Prosser alleges that under the FCRA:

44. At all relevant times, [Capital One], COS . . . have been under a FCRA-imposed duty to review, at least annually, information on Prosser's credit report and to correct any and all errors on the report.

45. [Capital One], COS … have breached their duty to correct erroneous information on Prosser's credit report.

46.  As the parent of Capital One and COS, COFC is liable for the errors, omissions, and misconduct of Capital One and COFC.

([Filing No. 27 at 7](#).)

The Capital One Defendants contend this claim fails as a matter of law because the FCRA "imposes no such duty on Capital One." ([Filing No. 40 at 7](#).)  They argue that Prosser's allegation that violations of FCRA Section 1681s-2(a), prohibiting a furnisher of credit information from providing information to a credit reporting agency, "if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). But even if Capital One did provide inaccurate information to a credit reporting agency, violations of Section 1681s-2(a) are exempt from private civil liability under Section 1681s-2(c) and only select federal agencies and state officials can enforce that provision. *See Parker v. Cap. One Auto Fin.*, No. 1:15-cv-00826-JMS-TAB, 2015 WL 7864182, at *3 (S.D. Ind. Dec. 3, 2015).

Prosser cites the Fair and Accurate Credit Transaction Act of 2003 in which the FCRA was "amended and greatly expanded to provide: (i) for the furnishers' duties concerning the accuracy and integrity of the information they furnish; (ii) for procedures that allow consumers to file disputes directly with the furnishers; and (iii) specifics regarding the procedures furnishers must follow in responding to direct disputes." ([Filing No. 51 at 5](#).) He argues that his Amended Complaint has "set forth sufficient facts" that he and his counsel communicated a direct dispute to the Capital One Defendants and that "the issues related to all issues set forth in" 12 C.F.R. § 1022.43(a)(1)–(4). *Id*. at 6.

The regulations under 12 C.F.R. § 1022.43 govern the duties of furnishers of information under the FCRA in "direct disputes," which is defined as "a dispute submitted directly to a furnisher (including a furnisher that is a debt collector) by a consumer concerning the accuracy of any information contained in a consumer report and pertaining to an account or other relationship

that the furnisher has or had with the consumer." 12 C.F.R. § 1022.41(b).  The applicable portion of Section 1022.43 raised by Prosser states that a furnisher must conduct a reasonable investigation of a direct dispute if it relates to:

> (1) The consumer's liability for a credit account or other debt with the furnisher, such as direct disputes relating to whether there is or has been identity theft or fraud against the consumer, whether there is individual or joint liability on an account, or whether the consumer is an authorized user of a credit account; (2) The terms of a credit account or other debt with the furnisher, such as direct disputes relating to the type of account, principal balance, scheduled payment amount on an account, or the amount of the credit limit on an open-end account; (3) The consumer's performance or other conduct concerning an account or other relationship with the furnisher, such as direct disputes relating to the current payment status, high balance, date a payment was made, the amount of a payment made, or the date an account was opened or closed; or (4) Any other information contained in a consumer report regarding an account or other relationship with the furnisher that bears on the consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living.

12 C.F.R. § 1022.43(a)(1)–(4).  Pursuant to these regulations, the delivery and receipt of the email from Munson on July 17, 2020, to the Capital One Defendants' counsel states a claim against them because the "email constitutes direct dispute from [Prosser] and [the Capital One Defendants] [have] wholly failed to provide any response in violation of its duties under the FCRA." (Filing No. 51 at 12.)  Thus, because of the "stonewalling" and failure to provide information to Prosser's request, the Capital One Defendants are liable for failing to respond to a direct dispute.  *Id*.

Prosser also invokes the regulations under 12 C.F.R. § 1022.42 which concern the reasonable policies and procedures concerning the accuracy and integrity of furnished information. Section 1022.42 states, "[e]ach furnisher must establish and implement reasonable written policies and procedures regarding the accuracy and integrity of the information relating to consumers that it furnishes to a consumer reporting agency." 12 C.F.R 1022.42(a). He contends the Capital One Defendants violated their "duty of maintaining accuracy and integrity of information" regarding the high balance on his High Balance Account pursuant to Section 1022.42 (Filing No. 51 at 9).

Prosser adds that in addition to these regulatory requirements, the Capital One Defendants violated the duty to correct and update inaccurate information under 15 U.S.C. §1681s-2(a)(2) regarding the Mystery Account and the High Balance Account. *Id* at 10.

Responding to the Capital One Defendants' assertion that they were under no duty to review, at least annually, information on Prosser's credit report, Prosser details the "recent history of documented lax business practices" of the Capital One Defendants that render their defense meritless. *Id* at 13. He contends that it is reasonable to infer that Capital One's "questionable business practices are integrally related to the High Balance Account", and reiterates the Capital One Defendants' failure to follow the regulations of Section 1022.42 and uphold their duties under FCRA § 1681s-2(a)(2). *Id*. at 14. Prosser argues the allegations in his Amended Complaint regarding "incorrect reporting" are related to the Mystery Account and the High Balance Account, and that when "read in conjunction with the other pleading paragraphs of the Complaint," Count 3 "sets forth adequate notice to [the Capital One Defendants] that they are a liable for the 'errors, omissions, and misconduct'" related to Prosser's credit report. *Id*. at 15.

The Capital One Defendants reply that Prosser's claims regarding their alleged violations of Section 1681s-2(a)(2) and 12 C.F.R. 1022.42 fail because neither the statute nor its implementing regulations provide for a private right of action. (Filing No. 55 at 3.) Citing numerous persuasive decisions from across various districts in support, the Capital One Defendants restate that Section 1681s-2(c) specifically excludes violations of Section 1681s-2(a) from private civil liability. *Id.* The Capital One Defendants note that Section 1681s-2(c) states: "Except as provided in Section 1681(c)(1)(B) of this title, sections 1681n and 1681o of this title do not apply to any violation of . . . (1) subsection (a) of this section, *including any regulations issued thereunder* . . . ." *Id.* n.1 (citing 15 U.S.C § 1681s-2(c)(1) (emphasis in original)). Thus,

they argue, "because neither the FCRA nor its regulations provide for a private right of action," Prosser's FCRA claims in Count 3 fail as a matter of law and should be dismissed. *Id*. at 4.

After a review of the Amended Complaint, the Court finds that Prosser's Count 3 claim alleging a breach of duty to review, at least annually, information on Proser's credit report and correct all errors, fails to state a claim for which relief can be granted. Prosser fails to plead sufficient factual support concerning the claim that would provide relief that is plausible on its face under the FCRA. *See Hecker*, 556 F.3d at 580 (citation and quotation marks omitted).

Prosser asserts his claim is brought under Section 1681s-2(a)(2) of the FRCA and its implementing regulations, however there is no private right of action under those provisions. *Purcell v. Bank of Am*., 659 F.3d 622, 623 (7th Cir. 2011) (holding that "[A]lthough [plaintiff's] claim arises under § 1681s–2(a), that section does not create a private right of action."); *Perry v. First Nat'l Bank*, 459 F.3d 816, 819, 822 (7th Cir. 2006) (stating that Section 1681s–2(c) includes "an exemption from private actions for failure to comply with 15 U.S.C. § 1681s–2(a)"); *see also Parker*, 2015 WL 7864182, at *3 ("Section 1681s-2(c) specifically exempts violations of Section 1681s-2(a) from private civil liability and only designated Federal agencies and State officials can enforce that section.") (internal quotation marks and citations omitted).

Moreover, Prosser's claims about an "FCRA-imposed duty" are vague and rely solely on conclusory statements of law which are insufficient to defeat a motion to dismiss for failure to state a claim. *See Stachowski v. Town of Cicero*, 425 F.3d 1075, 1078 (7th Cir. 2005) ("We are not required, however, to accept assertions of law or unwarranted factual inferences."); *see also Nelson v. Monroe Regional Med. Ctr*., 925 F.2d 1555, 1559 (7th Cir.), *cert. denied*, 502 U.S. 903, (1991). For these reasons, the Motion to Dismiss Count 3 of the Amended Complaint against the Capital One Defendants is **granted**.

16

**C.**   **Counts 2 and 4: State Law Claims**

In Counts 2 and 4 of the Amended Complaint, Prosser alleges state law violations under the IDCSA and ISCPA.  In Count 2, he alleges the Capital One Defendants violated the IDCSA by: (1) denying Prosser information he requested and was entitled to; (2) reporting highly inaccurate information to the general public in the credit reports; and (3) not doing due diligence internally as required to correct material errors.  (Filing No. 27 at 6.)  In Count 4, Prosser alleges that he has been over sixty years of age "at all relevant times" and alleges the Capital One Defendants violated the ISCPA by "denying Prosser information" he requested and to which he was "entitled" and, "by reporting highly inaccurate information and/or failing to monitor and correct Prosser's credit reports".  *Id.* at 7.

**1.**   **The Indiana Deceptive Consumer Sales Act**

Under the IDCSA a "supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction."  Ind. Code § 24-5-0.5-3(a).  The IDCSA has a long reach and the term "consumer transaction" includes "[t]he collection of or attempt to collect a debt by a debt collector."  Ind. Code § 24-5-0.5-2(a)(1)(C).  A "supplier" includes any "person who regularly engages in or solicits consumer transactions...."  Ind. Code § 24-5-0.5-2(a)(3)(A).

The IDCSA provides for two kinds of actionable deceptive acts:  'uncured' deceptive acts and 'incurable' deceptive acts."  *Crum v. SN Servicing Corp*., No. 1:19-cv-02045-JRS-TAB, 2021 WL 3514153, at *2 (S.D. Ind. Aug. 10, 2021) (quoting *McKinney v. State*, 693 N.E.2d 65, 68 (Ind. 1998)).  An uncured deceptive act is defined as "a deceptive act . . . with respect to which a consumer who has been damaged by such act has given notice to the supplier," but "no offer to cure has been made to such consumer within thirty (30) days after such notice," or "the act has not

been cured as to such consumer within a reasonable time after the consumer's acceptance of the offer to cure." Ind. Code § 24-5-0.5-2(a)(7). An incurable deceptive act is defined as "a deceptive act done by a supplier as part of a scheme, artifice, or device with intent to defraud or mislead." Ind. Code § 24-5-0.5-2(a)(8).

Therefore, an IDCSA claim founded on an incurable deceptive act includes the element of "intent to defraud or mislead" while a claim based on an uncured deceptive act lacks such an intent-to-defraud element. *McKinney*, 693 N.E.2d at 68.

### 2.  The Indiana Senior Consumer Protection Act

The ISCPA states that a "person commits financial exploitation of a senior consumer when the person knowingly and by deception or intimidation obtains control over the property of a senior consumer or illegally uses the assets or resources of a senior consumer." Ind. Code § 24-4.6-6-4(a). Under this statute there exists a private right of action. Ind. Code § 24-4.6-6-5(a). Because the statutory scheme demonstrates that the "by deception or intimidation" language only modifies how an offender obtains control over a senior's property, not the manner of the illegal use, a violator could be in breach of the statute without using deception or intimidation. *Bank of Am., N.A. v. Cartwright*, No. 3:21-cv-184 DRL-MGG, 2021 WL 3912563, at *11 (N.D. Ind. Sept. 1, 2021); *See* Ind. Code §§ 24-4.6-6-4(a-b), 24-4.6-6-5(c).

### 3.  Prosser's Claims

The Capital One Defendants assert that Prosser's claims under the IDSCA (Count 2) and ISCPA (Count 4) are preempted by the FCRA and otherwise fail to state any actionable claim. (Filing No. 40 at 8.) They argue the FCRA preempts any state claim "with respect to any subject matter regulated under [15 U.S.C. § 1681s-2] relating to the responsibilities of persons who furnish information to consumer agencies." *Id.* (citing 15 U.S.C. § 1681t(b)(1)(F)); *see also Purcell*, 659

18

F.3d at 624–26.  The Capital One Defendants contend that the conclusory and vague allegations of violations of the IDSCA and ISCPA are tied into Prosser's FCRA claim.  They assert the state law claims are connected to the FCRA based on Prosser's allegation that Capital One reported inaccurate credit information to the consumer reporting agencies and failed to respond to Prosser's information request or correct alleged errors on Prosser's credit report.

Prosser responds that the FCRA's relationship to state laws does not preclude his causes of action under the IDCSA and ISCPA.  With respect to the IDCSA, the errors on his credit report resulted in his name and credit information being "assigned to an illegal account of unknown origin and possibly linked to illegal activities."  (Filing No. 51 at 16.)  Prosser contends that by allowing ostensibly illegal accounts to be created in the name of consumers and "willfully failing to monitor or report " on these accounts removes the actions of the Capital One Defendants outside the exceptions of 15 U.S.C. §1681T(b)(1)(F).  *Id.* at 16-17.  Arguing that subsection F of the relevant provision only excepts activities under Section 1681s-2 that relate to legitimate responsibilities of persons who furnish information to consumer agencies, Prosser argues the Capital One Defendants were misappropriating consumer information and assigning false accounts to a consumer's name, credit history, and report, which is not a legitimate responsibility. Prosser asserts these activities fall under the definition of a "consumer transaction" as the Capital One Defendants' actions "constitute a disposition of an intangible asset or a service to a person for purposes that are primarily" for his personal use.  *Id.* at 17 (citing Ind. Code § 24-5-0.5-2(a)(1) and (a)(4)).

Prosser contends that his Amended Complaint adequately describes the acts by the Capital One Defendants as an "uncured deceptive act," because his counsel provided notice of the High Balance Account to the Capital One Defendants' counsel in the July 2020 email.  He argues that his counsel requested missing information regarding the account and no offer to cure was made or

has been made to Prosser within thirty days or after the email was sent.  *See generally* 15 U.S.C §

1681i.

Regarding the ISCPA, Prosser asserts that he is sixty-eight years old and the ISCPA

provides that "financial exploitation of a senior includes but is not limited to, the misappropriation,

of [assets or resources] by undue influence, breach of a fiduciary relationship, fraud, deception,

extortion, intimidation, or use of the assets or resources contrary to law."  *Id.* at 17-18 (citing Ind.

Code § 24-4.6-6-4(b)).  Prosser argues that because his Amended Complaint states the Capital One

Defendants reported "highly inaccurate information and/or fail[ed] to monitor and correct Prosser's

credit reports", (*see* Filing No. 27 at 7), it is reasonable to infer that the Capital One Defendants

established the account for someone other than Prosser and furnished false information about

transactions in his name for months (Filing No. 51 at 18).

The Capital One Defendants reply that Prosser's state law claims are expressly preempted

by the FCRA.  With respect to the IDCSA, the Capital One Defendants assert that Prosser's claim

fails because he alleges no conduct by Capital One in connection with a "consumer transaction".

Filing No. 55 at 9,  citing Ind. Code § 24-5-0.5-2(a)(1). Prosser's claim fails because he does not

identify any "intangible asset" or "service" that the Capital One Defendants sold, leased, assigned,

or awarded to Prosser or otherwise disposed of.  *Id*.

The Capital One Defendants further argue the state law claim fail because Prosser does not

allege facts to establish an "uncured" or "incurable" deceptive act by the Capital One Defendants.

Despite Prosser claiming that his July 2020 email to the Capital One Defendants' counsel described

an "uncured deceptive act," the Capital One Defendants refute Prosser's claim noting the IDCSA

requires that the notice must be in writing and "state fully the nature of the alleged deceptive act

and the actual damages suffered therefrom."  *Id*., citing Ind. Code § 24-5-0.5-5.  The Capital One

Defendants contend that Prosser's claims could only be for an "incurable" deceptive act , which is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *See McCormick Piano & Organ Co. v. Geiger*, 412 N.E.2d 842, 849 (Ind. Ct. App. 1980). *Id*. Given that the Amended Complaint contains no facts or allegations indicating an "intent to defraud or mislead" on the part of the Capital One Defendants and the failure to meet the heightened pleading standards of Rule 9(b), Prosser's IDCSA claim fails as a matter of law.

Regarding the ISCPA claim, the Capital One Defendants argue that Prosser's Amended Complaint lacks an allegation that the Capital One Defendants "knowingly and by deception or intimidation obtained[ed] control over the property of [Prosser]" or illegally used his assets or resources. (Filing No. 55 at 10) (citations omitted). The Capital One Defendants assert that because Prosser cannot and does not allege that they obtained control over any property of his or illegally used any of his assets or resources, through any form of deception or intimidation, Prosser's claim under the ISCPA fails as a matter of law and should be dismissed with prejudice. *Id*.

### 4.    <u>Jurisdiction Over State Law Claims</u>

Pursuant to the dismissal of the federal law claims in this action, and because removal was granted on the basis of federal question jurisdiction, the Court would only have pendant jurisdiction over Prosser's state law claims. Given the Court has found that all of Prosser's federal law claims should be dismissed, it could now dismiss any remaining state law claims without prejudice. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, (1966). Title 28, U.S.C. § 1367(c)(3) states that a federal court may decline to exercise supplemental jurisdiction over state law claims if it dismisses all claims over which it has original jurisdiction. The Seventh Circuit holds, "when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over

pendent state-law claims rather than resolving them on the merits." *Wright v. Associated Ins. Cos. Inc*., 29 F.3d 1244, 1251 (7th Cir. 1994).

When the Court chooses to retain jurisdiction over state law claims, there is a consideration made of whether such action is an "unusual case" where the relevant factors, including "judicial economy, convenience, fairness and comity" weigh towards the court deciding state claims on the merits. *Id.* at 1251–52. The Supreme Court has noted that the choice to exercise pendant jurisdiction under 28 U.S.C. § 1367(c)(3) is especially compelling in instances where "the state claim is so closely tied to questions of federal policy," like when such claims involve the federal doctrine of preemption. *United Mine Workers*, 383 U.S. at 727. As those factors are present here and in the interest of judicial economy, fairness, and comity, the Court will retain jurisdiction over Prosser's state law claims and determine whether they are preempted by federal law.

## 5.   Section 1681t(b)(1)(F)

Under the FCRA, Section 1681t states:

> Except as provided in subsections (b) and (c), this subchapter does not annul, alter, affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers, or for the prevention or mitigation of identity theft, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency.

15 U.S.C. § 1681t. The relevant exemptions provision holds, "[n]o requirement or prohibition may be imposed under the laws of any State, with respect to any subject matter regulated under … section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies" except for two exceptions for certain Massachusetts and California laws. 15 U.S.C. § 1681t(b)(1)(F).

In analyzing whether Section 1681t(b)(1)(F) preempts Prosser's state law claims, the Court notes that the Seventh Circuit has rejected the argument that section 1681t(b) should be read

22

narrowly and found that it applies not only to state statutory claims and but that section 1681t(b)'s preemptive force applies equally to state common law claims. *Aleshire v. Harris, N.A.*, 586 F. App'x 668, 671 (7th Cir. 2013) (citing *Purcell v. Bank of Am.*, 659 F.3d 622, 623–26 (7th Cir.2011)). The expansive reading of the Seventh Circuit's holding in *Purcell* controls here and this Court finds that Section 1681t(b)(1)(F) applies to Prosser's IDCSA and ISCPA claims.

### 6.    <u>Determination of State Law Claims</u>

Based on the reasons described above, the Court determines that Section 1681t(b)(1)(F) preempts Prosser's state law claims brought under the IDCSA and ISCPA as they arise out of the Capital One Defendants' duty to provide accurate information to consumer reporting agencies as covered by 15 U.S.C. § 1681s-2.

Prosser makes no allegations in his Amended Complaint regarding conduct by the Capital One Defendants in connection with a consumer transaction or deceptive act that would support his claims under the IDCSA. *See* Ind. Code § 24-5-0.5-3(a). The Court rejects Prosser's unsupported allegations of misappropriation and does not find that he adequately described any "uncured deceptive acts" by the Capital One Defendants to support a violation of the IDCSA. *Id.* Similarly, Prosser failed to allege or provide sufficient factual support that the Capital One Defendants obtained control over any property belonging to him or otherwise used deception or intimidation to support his claim in Count 4 under the ISCPA. *See* Ind. Code § 24-4.6-6-4(a).

Therefore, the Court **grants** the Motion to Dismiss Counts 2 and 4 against the Capital One Defendants under the IDCSA and ISCPA, respectively. Prosser's state law claims are preempted by federal law and are **dismissed with prejudice**.

## IV.   **CONCLUSION**

For the preceding reasons, the Court **GRANTS** the Capital One Defendants' Motion to

Dismiss (Filing No. 39). Prosser's claims against these defendants are **dismissed with prejudice**.[3]

The **Clerk is directed** to terminate the Capital One Defendants from this case.

No final judgment will issue at this time because Prosser's claims against the Equifax

Defendants have not been resolved.

**SO ORDERED**.

Date:  12/21/2021

_Tanya Walton Pratt_

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

John C. Hoard
RUBIN & LEVIN, P.C.
johnh@rubin-levin.net

Jeffrey D. Pilgrim
PILGRIM CHRISTAKIS LLP
jpilgrim@pilgrimchristakis.com

Alan M. Ritchie
PILGRIM CHRISTAKIS LLP
aritchie@pilgrimchristakis.com

Steven D. Brock
CLARK HILL PLC
sbrock@clarkhill.com

---

[3] The Seventh Circuit has noted that "dismissal under Rule 12(b)(6) . . . is a dismissal with prejudice." *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 697 (7th Cir. 2015).

24